IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division



PATRICK J. RUSSO,

        Plaintiff,

v.                                                                         Civil Action No. 4:11cv68

SCHOOL BOARD OF THE CITY
OF HAMPTON, VIRGINIA,

        Defendant.

### *MEMORANDUM OPINION AND ORDER*

Before the Court is Defendant's Motion to Dismiss, or in the alternative, for Summary Judgment, pursuant to Rules 12(b)(1) and 56 of the Federal Rules of Civil Procedure, respectively. This matter has been fully briefed and is ripe for judicial determination. For the reasons set forth herein, Defendant's Motion to Dismiss is **GRANTED**.

### I. FACTUAL AND PROCEDURAL HISTORY

Dr. Patrick J. Russo ("Dr. Russo") has brought this action against the School Board of the City of Hampton, Virginia ("School Board"), alleging various constitutional and breach of contract claims arising from an employment contract by which the School Board employed Dr. Russo as Superintendent of Hampton City Schools between July 1, 2004 and June 30, 2009. Am. Compl. ¶¶ 1-2, 74-113. As there have been parallel proceedings in Virginia state court on this matter, the procedural history will incorporate that proceeding, which is summarized *infra*.

1

## A. Factual History

The School Board hired Dr. Russo as Superintendent under a four-year contract beginning July 1, 2004. Am. Compl. ¶ 1. This 2004 contract contained a contract extension provision. Def.'s Br. Supp. Mot. Dismiss or Alternative, Summ. J. at ¶ 2, p. 2 ("Def.'s Br. Supp. Mot. Dismiss"). Pursuant to the contract extension provision, Dr. Russo and the School Board entered into a new four-year contract on September 26, 2006, which became effective on July 1, 2006, and expired on June 30, 2010 ("2006 Contract"). Am. Compl. ¶ 6. The 2006 Contract provides that the School Board would pay Dr. Russo an annual salary of $169,260, full premiums for medical and dental insurance for Dr. Russo and his family, all contributions for Dr. Russo to the Virginia Retirement System ("VRS"), and other benefits. Am. Compl. ¶¶ 7-14; Am. Compl., Ex. 1. Section 5(B)(ii) of the 2006 Contract also provides that the School Board would make payments for a tax deferred annuity, titled jointly with Dr. Russo and the School Board, pursuant to either Section 403(b), 415, or 457 of the Internal Revenue Code. Am. Compl., Ex. 1, § 5(B)(ii). Under Section 5(B)(ii), the School Board was to fund twenty-four months of retirement credit for each year Dr. Russo worked under the 2006 Contract. Am. Compl., Ex. 1, § 5(B)(ii). This Section also states that if Dr. Russo terminated his employment with the School Board before the expiration date of the contract, i.e., June 30, 2010, he would forfeit the payments the School Board made for the annuity. Am. Compl., Ex. 1, § 5(B)(ii).

Dr. Russo set up the annuity under 26 U.S.C. § 403(b)(7) of the Internal Revenue Code through his personal financial advisor with whom he had an existing investment account, and Dr. Russo signed a Salary Deferral Agreement. Am. Compl. ¶¶ 10, 16; Am. Compl., Ex. 2; Def.'s Br. Supp. Mot. Dismiss at ¶ 5, p. 2. The annuity was held in Dr. Russo's name only and was not jointly titled with the School Board. Def.'s Br. Supp. Mot. Dismiss at ¶ 10, p. 3; *see* Am.

Compl., Ex. 2. Dr. Russo hired Dr. Victor Hellman as the Chief Operations Officer for the City of Hampton Schools and Dr. Hellman executed the Salary Deferral Agreement on October 11, 2006. Am. Compl. ¶¶ 18-19; Def.'s Br. Supp. Mot. Dismiss at ¶¶ 6-7, p. 2.

The Salary Deferral Agreement states, in relevant part:

> The above named Employee [Dr. Russo] of the referenced Employer [the School Board] agrees to work for a reduced salary as indicated herein and the Employer agrees to remit this amount on Employee's behalf into the program selected [pre-tax 403(b)(7)] .... The Employee understands and agrees to the following: 1) this Salary Deferral Agreement is legally binding and irrevocable with respect to all amounts earned while this agreement is in effect; 2) this Salary Deferral Agreement may be terminated at any time for amounts not yet earned .... 3) this Salary Deferral Agreement may be changed with respect to salary not yet earned in accordance with Employer's administrative procedures ....

Am. Compl., Ex. 2 at 7.

In approximately May or June of 2008, the Chairman of the School Board, Mr. Fred Brewer, informed Dr. Russo that a majority of the School Board had agreed not to extend Dr. Russo's 2006 Contract at that time. Am. Compl. ¶ 33. Mr. Brewer also knew that the School Board was not in favor of extending Dr. Russo's contract in the future. Am. Compl. ¶ 33. Months after Dr. Russo learned that the School Board did not intend to extend his 2006 Contract, a recruiter approached Dr. Russo about interviewing for another school superintendent position. Am. Compl. ¶ 37. As a result, Dr. Russo informed the School Board in February 2009 that, effective June 30, 2009, he was resigning as Superintendent of the City of Hampton Schools to become Superintendent of Henrico County Public Schools. Am. Compl. ¶ 38.

Following Dr. Russo's notice of resignation, he and the School Board discussed entering into a Superintendent's Transition Agreement and General Release ("Transition Agreement"). Am. Compl. ¶ 41. The School Board's attorney then drafted the Transition Agreement and Dr. Russo reviewed it prior to finalization. Am. Compl. ¶¶ 41-45. Accordingly, on or about

3

April 14, 2009, the School Board approved the Transition Agreement and authorized the Chairman of the School Board to enter into the Agreement, which the Chairman then executed. Am. Compl. ¶¶ 46-47; *see* Am. Compl., Ex. 4. Dr. Russo also executed the Transition Agreement. Am. Compl. ¶ 48; *see* Am. Compl., Ex. 4.

The pertinent terms of the Transition Agreement were as follows: 1) Dr. Russo's resignation would be effective June 30, 2009, and an Interim Superintendent would be appointed, effective April 15, 2009; 2) Dr. Russo would be expected to be available until June 30, 2009, to assist the Interim Superintendent with the transition; 3) Dr. Russo would be able to use his office, computer, email account, and cell phone until June 30, 2009; 4) Dr. Russo could participate in graduation and other events associated with his position and the School Board would continue to pay for any expenses and insurance associated with Dr. Russo's professional duties; 5) the School Board would continue to provide Dr. Russo with all compensation and other benefits contained in the 2006 Contract from April 15, 2009, until June 30, 2009; and 6) Dr. Russo would be paid his accrued and unused leave time, and he would not be required to use any leave after April 15, 2009. Am. Compl. ¶¶ 49-52.

Within a month of executing the Transition Agreement, the School Board learned that Dr. Russo had not jointly titled the annuity, as required under the 2006 Contract. Am. Compl. ¶ 55; Def.'s Br. Supp. Mot. Dismiss at ¶ 10, p. 3. As a result, the School Board voted to discontinue and then discontinued payment of Dr. Russo's base salary and benefits, including: annuity payments for April, May, and June 2009; contributions to Dr. Russo's VRS account for May and June 2009; dependent care Flexible Spending Account contributions for May and June 2009; Dr. Russo's travel supplement for May and June 2009; and Dr. Russo's accrued but unused leave as of April 15, 2009. Am. Compl. ¶¶ 55-61. The School Board also did not transfer Dr. Russo's

accrued and unused sick leave from Hampton City Schools to Henrico County Public Schools. Am. Compl. ¶ 62.

In accordance with Dr. Russo's tendered resignation and the Transition Agreement, his employment with the School Board terminated on June 30, 2009. *See* Am. Compl., Ex. 4.

## B. Procedural History

Before this matter came to this Court, there was a related proceeding in the Circuit Court of Hampton, Case No. CL09002356. In that case, the School Board filed a two-count complaint against Dr. Russo on November 3, 2009, claiming that Dr. Russo breached the 2006 Contract by not jointly titling the annuity and seeking judgment for the payments the School Board made for the annuity. Def.'s Br. Supp. Mot. Dismiss, Ex. A. On December 11, 2009, Dr. Russo responded by filing a demurrer and counterclaim based on the Transition Agreement, claiming that the Transition Agreement constituted a novation of the 2006 Contract, asserting that the Transition Agreement contained no provision for forfeiture of the annuity payments, and seeking a judgment for salary and benefits under the Transition Agreement. Def.'s Br. Supp. Mot. Dismiss, Ex. B. On July 16, 2010, the School Board filed a motion for partial summary judgment against Dr. Russo, seeking a judgment that the Transition Agreement was not a novation of the 2006 Contract and that Dr. Russo was obligated to reimburse the School Board for the annuity payments it made, pursuant to the 2006 Contract's forfeiture provision. Def.' s Br. Supp. Mot. Dismiss, Ex. C. On July 19, 2010, Dr. Russo then moved for summary judgment on the School Board's claims against Dr. Russo and on Dr. Russo's breach of contract claim against the School Board. Def.'s Br. Supp. Mot. Dismiss, Ex. D.

Following full briefing by the parties and oral argument on the motions for summary judgment, Circuit Court Judge Thomas A. Shadrick first ruled from the bench on March 21,

2011, and later issued a formal opinion on May 23, 2011.[1] Pl.'s Br. Opp'n Mot. Dismiss, Ex. 8 at 24; Def.'s Br. Supp. Mot. Dismiss, Ex. E. Judge Shadrick held that Dr. Russo forfeited the School Board's payments toward the annuity when he resigned his position prior to the expiration of the 2006 Contract and awarded judgment for the annuity payments to the School Board. Def.'s Br. Supp. Mot. Dismiss, Ex. E. In particular, Judge Shadrick ruled that the Transition Agreement and the Salary Deferral Agreement were not novations of the 2006 Contract. Def.'s Br. Supp. Mot. Dismiss, Ex. E. Judge Shadrick also denied Dr. Russo's motion for summary judgment on his counterclaim. Def.'s Br. Supp. Mot. Dismiss, Ex. E. On May 23, 2011, Dr. Russo filed a motion for reconsideration, which Judge Shadrick denied on May 24, 2011. Def.'s Br. Supp. Mot. Dismiss, Ex. F. Judge Shadrick also granted Dr. Russo a nonsuit on his counterclaim on May 23, 2011. Def.'s Br. Supp. Mot. Dismiss, Ex. G.

In the instant case, Dr. Russo filed a complaint with this Court on April 19, 2011,[2] and an Amended Complaint on April 20, 2011. Dr. Russo's Amended Complaint asserts four claims upon which he seeks relief. In Count I, Dr. Russo seeks a declaration that the Salary Deferral Agreement is legally binding and that all contributions made into the 403(b)(7) account pursuant to the Salary Deferral Agreement are elective deferral contributions that are fully vested and, thus, fully owned by Dr. Russo. Am. Compl. ¶¶ 67-73; Am. Compl. at 17. In Count II, Dr. Russo seeks a declaration that he has a property right in the 403(b)(7) contributions made from November 2006 through March 2009 and in his compensation and benefits pursuant to the Salary Deferral Agreement and the Transition Agreement. Am. Compl. ¶¶ 74-81; Am. Compl. at 17-

---

[1] There appear to be some discrepancies in the dates in the Circuit Court records, as some of the court documents refer interchangeably to March 2011 and May 2011 as when the court ruled on the motions for summary judgment and motion for reconsideration. For the purposes of this Court's decision, the difference in dates is inconsequential and the Court presumes that the relevant events in the state court proceedings occurred in May 2011, rather than March 2011.
[2] Thus, Dr. Russo filed his complaint in this case *before* the Hampton Circuit Court issued its formal opinion on May 23, 2011.

6

18. In Count III, Dr. Russo asserts that the School Board's decision to stop paying Dr. Russo his salary and benefits, including contributions toward his 403(b)(7) account under the Salary Deferral Agreement and the Transition Agreement, constituted a deprivation of vested property rights without due process under the Fourteenth Amendment to the United States Constitution. Am. Compl. ¶¶ 82-91, 97-98; Am. Compl. at 18. In Count III, Dr. Russo also asserts that the School Board's failure to pay him his salary and benefits constituted a taking under the Fifth Amendment to the U.S. Constitution. Am. Compl. ¶¶ 92-98; Am. Compl. at 18. Dr. Russo brings both claims in Count III under 42 U.S.C. § 1983. In Count IV, Dr. Russo asserts a breach of contract claim against the School Board for failure to pay his salary and benefits in accordance with the Salary Deferral Agreement and the Transition Agreement. Am. Compl. ¶¶ 99-113; Am. Compl. at 18.

Dr. Russo seeks actual, compensatory, and punitive damages for the School Board's alleged breach of contract and violations of Dr. Russo's constitutional rights, as well as interest, reasonable attorney's fees and costs, and any other relief this Court deems appropriate. Am. Compl. at 15.

In response, the School Board moved to dismiss Dr. Russo's Amended Complaint for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, on August 9, 2011. In the alternative, the School Board seeks summary judgment in its favor under Rule 56 of the Federal Rules of Civil Procedure. The School Board moves to dismiss, or in the alternative, seeks summary judgment, on three grounds: 1) Dr. Russo's claims arising from the Salary Deferral Agreement and Transition Agreement present no federal question; 2) Dr. Russo's claim to the annuity payments is barred by the doctrine of *res judicata*;

and 3) the Court should abstain from exercising jurisdiction under the *Younger* and *Colorado River* doctrines.

## II. LEGAL STANDARD

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of an action if the Court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Unless a matter involves an area over which federal courts have *exclusive* jurisdiction,[3] a plaintiff may bring suit in federal court only if the matter involves a federal question arising "under the Constitution, laws or treaties of the United States," 28 U.S.C. § 1331, or if "the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different States," 28 U.S.C. § 1332(a)(1). *See Pinkley, Inc. v. City of Frederick, Md.*, 191 F.3d 394, 399 (4th Cir. 1999) ("Federal courts are courts of limited subject matter jurisdiction, and as such there is no presumption that the court has jurisdiction."). Accordingly, "before a federal court can decide the merits of a claim, the claim must invoke the jurisdiction of the court." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006).

The Court assumes that all factual allegations in the complaint are true if it is contended that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). However, if the factual basis for jurisdiction is challenged, the plaintiff has the burden of proving subject matter jurisdiction. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). To determine whether subject matter jurisdiction exists, the reviewing court may consider evidence outside the pleadings, such as affidavits or depositions, *Adams*, 697 F.2d at

---

[3] *See* 28 U.S.C. § 1333 (federal courts have exclusive jurisdiction to hear admiralty, maritime, and prize cases); 28 U.S.C. § 1334 (federal courts have exclusive jurisdiction to hear bankruptcy cases and proceedings).

1219, or whatever other evidence has been submitted on the issues, *GTE South Inc. v. Morrison*, 957 F. Supp. 800, 803 (E.D. Va. 1997). A party moving for dismissal for lack of subject matter jurisdiction should prevail only if material jurisdictional facts are not in dispute and the moving party is entitled to prevail as matter of law. *Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d at 768.

Under the jurisdictional grant of 28 U.S.C. § 1331, a case unequivocally "arises under" federal law where federal law creates the cause of action. *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004). However, a case may also "arise under" federal law where "the vindication of a right under state law necessarily turn [s] on some construction of federal law," *id.* (quoting *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986), but "only [if] . . . the plaintiff's right to relief *necessarily depends* on a *substantial* question of federal law," *id.* (quoting *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 28 (1983). *Accord Morgan Cnty. War Mem'l Hosp. v. Baker*, 314 F. App'x 529, 533 (4th Cir. 2008). Thus, in determining whether to grant federal question jurisdiction for a state law claim, courts must ask whether the "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prod. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). "A plaintiff's right to relief for a given claim necessarily depends on a question of federal law only when *every* legal theory supporting the claim requires the resolution of a federal issue." *Dixon*, 369 F.3d at 816.

**B. Alternative Motion for Summary Judgment**

According to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also McKinney v. Bd. of Trustees of Md. Cmty. Coll.*, 955 F.2d 924, 928 (4th Cir. 1992) ("[S]ummary judgments should be granted in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not necessary to clarify the application of the law.") (citations omitted). In deciding a motion for summary judgment, the court must view the facts, and inferences to be drawn from the facts, in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247-48 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once a motion for summary judgment is properly made and supported, the opposing party "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 586-87 (internal quotations omitted). Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

### III. DISCUSSION

**A. Motion to Dismiss for Lack of Subject Matter Jurisdiction**

*1. Counts I, II, and III: Section 1983 Claims*

Dr. Russo invokes the jurisdiction of this Court under 42 U.S.C. § 1983 ("§ 1983" or "Section 1983"). Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. As a general matter, claims brought under Section 1983 confer federal question jurisdiction. *See Front Royal & Warren Cnty. Indus. Park Corp. v. Town of Front Royal, Va.*, 135 F.3d 275, 278 (4th Cir. 1998) ("Federal court jurisdiction to hear § 1983 cases exist under the general federal question statute, 28 U.S.C. § 1331."). Further, local government bodies – like the School Board in this case – are considered "persons" for the purposes of Section 1983. *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978).

However, the U.S. Supreme Court has held that a simple breach of contract claim does not give rise to a Section 1983 claim. In *Shawnee Sewerage & Drainage Co. v. Stearns*, the Court held that when a "simple breach of contract is . . . alleged on the part of the city . . . [t]he breach of a contract is neither a confiscation of property nor a taking of property without due process of law." *Shawnee Sewerage & Drainage Co. v. Stearns*, 220 U.S. 462, 471 (1911); *see also Gannett Fleming West, Inc. v. Village of Angel Fire*, 375 F. Supp. 2d 1104, 1108 (D.N.M. 2004) ("Other federal courts have also found that breach of contract claims do not fall within the scope of constitution [sic] violations that § 1983 protects.") (citing *Shawnee Sewerage & Drainage Co.*, 220 U.S. at 471). More recently, the Supreme Court affirmed that, where a state provides a remedy through a breach of contract suit in state court, there is no due process violation where the state does not pay a contract. *See Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 195-96 (2001). In *Lujan*, the Court stated:

> Unlike . . . claimants [who had been denied a present right, such as seizure of real property or employment suspension], respondent has not been denied any present entitlement. [Respondent] has been deprived of a payment that it contends it is owed under a contract, based on the State's determination that [Respondent] failed to comply with the contract's terms. [Respondent] has only a claim that it did comply with those terms and therefore that it is entitled to be paid in full. Though we assume for the purposes of the decision here that [respondent] has a property interest in its claims for payment, it is an interest, unlike the interests discussed above, that can be fully protected by an ordinary breach-of-contract suit.

11

*Lujan*, 532 U.S. at 196. Accordingly, the Court held: "[I]f California makes ordinary judicial process available to respondent for resolving its contractual dispute, that process is due process." *Lujan*, 532 U.S. at 197.

Similarly, the United States Court of Appeals for the Fourth Circuit has held that a simple breach of contract against a public entity does not give rise to an action under Section 1983. In *Heath v. City of Fairfax*, the Fourth Circuit held that the district court had no jurisdiction, absent diversity of citizenship, in an action that was simply one for breach of contract. *Heath v. City of Fairfax*, 542 F.2d 1236, 1237-38 (4th Cir. 1976) (per curiam). The plaintiffs in *Heath* were police officers who contended that the city, pursuant to a salary scale ordinance, violated both their due process rights by failing to pay them the salary they claimed under their contract and their right to equal protection since the city paid the police chief his salary increases but not the police officers'. *Heath*, 542 F.2d at 1237. The Fourth Circuit further explained in *Heath*:

> The plaintiffs' theory that the City has violated their due process rights by failing to pay them the salary they claim under their contract, and that it has violated equal protection by giving "automatic" annual salary increases to the Chief of Police and not to them, thereby giving rise to jurisdiction under [28 U.S.C. § 1331], if sustained, would mean that whenever a City or political subdivision fails to pay a disputed claim, and pays other claims, a suit on such claim rises above the level of a mere breach of contract and becomes an assertion of constitutional rights, justiciable under [28 U.S.C. § 1331]. Such a specious theory of federal jurisdiction has been uniformly repudiated.

*Heath*, 542 F.2d at 1238 (citing, *inter alia, Shawnee Sewerage & Drainage*, 220 U.S. at 471, *McCormick v. Okla. City*, 236 U.S. 657, 660 (1915), *Manila Inv. Co. v. Trammell*, 239 U.S. 31, 32-33 (1915), and *Doby v. Brown*, 232 F.2d 504, 505 (4th Cir. 1956).

Additionally, in *Taliaferro v. Willett*, the Fourth Circuit held that a tenured teacher's claim for contract damages did not present a substantial federal question. *Taliaferro v. Willett*, 588 F.2d 428, 428-29 (4th Cir. 1978) (per curiam). In *Taliaferro*, a former teacher alleged that her employer, a public college, violated her right as a tenured teacher to continue teaching until

the age of seventy by forcing her to retire prematurely, thereby resulting in contractual damages, and the teacher did not claim that the procedural deprivations caused her any independent injury. *Taliaferro*, 588 F.2d at 428-29. Accordingly, the Fourth Circuit remanded the case to the district court with "directions to dismiss for lack of a substantial federal question." *Taliaferro*, 588 F.2d at 429. Notably, the court in *Taliaferro* found no substantial federal question even where the issue was the teacher's right to continued employment, as opposed to her right to a specific benefit of that employment, the former of which is usually subject to greater constitutional protection. *See, e.g., Boyd v. Rockwood Area Sch. Dist.*, 105 F. App'x 382 (3d Cir. 2004) (acknowledging the distinction between a protected property interest in continued employment and a protected property interest in a benefit of that employment); *Ramsey v. Bd. of Educ. of Whitley Cnty., Ky.*, 844 F.2d 1268, 1274-75 (6th Cir. 1988) (holding that "an interference with a property interest in a pure benefit of employment, as opposed to an interest in the tenured nature of the employment itself, is an interest that can be and should be redressed by a state breach of contract action and not by a federal action under section 1983").

More recently, in *MCI Constructors, Inc. v. City of Greensboro*, the Fourth Circuit reaffirmed the holding in *Heath* that "there manifestly are no federal constitutional issues posed by a simple dispute over the construction of a [contract] and that is all there is to the case.' " *MCI Constructors, Inc. v. City of Greensboro*, 125 F. App'x 471, 477-78 (4th Cir. 2005) (quoting *Heath*, 542 F.2d at 1238). In *MCI Constructors*, the city entered into a contract with MCI Constructors ("MCI"), which provided that all disputes concerning MCI's fulfillment of the contract be submitted to the City Manager as a condition precedent to the MCI's recovery of payment under the contract. *MCI Constructors*, 125 F. App'x at 475, 477-78. MCI alleged that

13

this process denied MCI procedural due process. *MCI Constructors*, 125 F. App'x at 477-78. The Fourth Circuit rejected MCI's argument, stating:

> For there to be a due process violation, the City must have acted to deprive an individual of life, liberty, or property. There is no such deprivation here when it is grounded on the contractual language agreed to by the parties. "The mere fact that a city is a municipal corporation does not give to its refusal to perform a contract the character of a law impairing its obligation or depriving of property without due process of law."

*MCI Constructors*, 125 F. App'x at 478 (quoting *McCormick*, 236 U.S. at 660). *See also Dover Elevator Co. v. Ark. State Univ.*, 64 F.3d 442, 446 (8th Cir. 1995) ("[I]t is well established that 'a simple breach of contract does not rise to the level of a constitutional deprivation.'") (quoting *Medical Laundry Serv. v. Bd. of Trustees of Univ. of Ala.*, 906 F.2d 571, 573 (11th Cir. 1990)); *Bock Assocs. v. Chronister*, 951 F. Supp. 969, 975 (D. Kan. 1996) (holding that state's alleged breach of contract for failure to pay just compensation for Medicare services did not give rise to a claim for deprivation of a property right without due process and noting "[s]everal circuit courts have held that alleged breaches in contracts to provide services to governmental entities are not violations of due process rights either because a property interest was not involved or because the right to litigate the matter in court was sufficient 'due process.'") (citing to a comprehensive list of cases from other circuits holding the same).

With respect to employment contracts of public employees specifically, the Fourth Circuit has stated:

> The contract may provide a basis for recovery under a breach of promise theory, but that issue is not elevated to a constitutional question solely because the State is a party to the contract. As we have admonished repeatedly '(every) disagreement between a public employee with his employer over . . . the terms of his contract does not reach constitutional proportions.'

*Kilcoyne v. Morgan*, 664 F.2d 940, 942 (4th Cir. 1981) (quoting *Sigmon v. Poe*, 564 F.2d 1093, 1096 (4th Cir. 1977). In this context, the Sixth Circuit's decision in *Ramsey v. Board of*

*Education.*, on which the School Board relies in its brief, is instructive. *See Ramsey v. Bd. of Educ. of Whitley Cnty., Ky.*, 844 F.2d 1268, 1274-75 (6th Cir. 1988). In *Ramsey*, a retired teacher brought an action against the board of education and school superintendent under Section 1983, claiming she was deprived of property without due process when the board reduced her number of accumulated sick leave days and reduced her compensation for sick leave days when she retired. *Ramsey*, 844 F.2d at 1270-71. In holding that the teacher's claim did not state a valid Section 1983 action, the Sixth Circuit stated:

> Like an employee hired for a determinate period of time, an employee deprived of a property interest in a specific benefit, term, or condition of employment, suffers a loss which is defined easily (here, Ramsey has lost 113 (her eliminated days) times the amount of compensation per day the Board will give her when she retires) and therefore, any interference with that interest is redressed adequately in a state breach of contract action . . . . We emphasize that we do not hold that interferences with employment benefits cannot involve deprivations of property. We do hold, however, that an interference with a property interest in a pure benefit of employment, as opposed to an interest in the tenured nature of the employment itself, is an interest that can be and should be redressed by a state breach of contract action and not by a federal action under section 1983.

*Ramsey*, 844 F.2d at 1274-75 (citing, *inter alia,* the Fourth Circuit decision in *Taliaferro*, discussed *supra*). *See also Costello v. Town of Fairfield*, 811 F.2d 782, 784 (2d Cir. 1987) (alleged deprivation of a pension benefit increase did not "give rise to a cause of action under section 1983"); *Boston Envtl. Sanitation Inspectors Ass'n v. Boston*, 794 F.2d 12, 13 (1st Cir. 1986) (alleged deprivation of seniority and promotion rights contained in a collective bargaining agreement did not "amount to a deprivation of property without due process actionable under section 1983"); *Diederich v. Cnty. of Rockland*, 999 F. Supp. 568, 573 (S.D.N.Y. 1998) (rejecting takings claim alleging "loss without compensation of vacation time, personal, holiday, and sick leave time accruals, and retirement credit").

In the instant case, Dr. Russo was an employee of a public entity, the School Board. Thus, under Section 1983, Dr. Russo asserts that, as a public body, the School Board violated his Fourteenth Amendment right to due process prior to depriving him of property and that the School Board took his property without just compensation, in violation of the Fifth Amendment. Specifically, Counts I seeks a declaration that all contributions made into the 403(b)(7) account pursuant to the Salary Deferral Agreement are elective deferral contributions that are fully vested and, thus, fully owned by Dr. Russo. Count II seeks a declaration that Dr. Russo has a property right in the 403(b)(7) contributions made from November 2006 through March 2009 and in his compensation and benefits pursuant to the Salary Deferral Agreement and in the Transition Agreement. Further, Count III asserts that the School Board's refusal to pay him his base salary from April to June 2009, and to provide his annuity payments and other benefits for May and June 2009, constitute a deprivation of his vested property rights without due process. Count III also asserts that the School Board's failure to pay Dr. Russo for these alleged vested property rights amounts to a takings without just compensation.

As an initial matter, the Court understands that Dr. Russo's claims to his salary and benefits are based upon the Salary Deferral Agreement and Transition Agreement only and not the 2006 Contract, since Hampton Circuit Court Judge Shadrick ruled that Dr. Russo owed the School Board its payments towards his annuity under the 2006 Contract. Further, Judge Shadrick ruled that neither the Salary Deferral Agreement nor the Transition Agreement were novations of the 2006 Contract, although Dr. Russo essentially re-asserts this argument before this Court. However, the Court need not reach the merits of this claim in order to render a decision in this case.

The Court **FINDS** that Dr. Russo's asserted claims to his salary and benefits, stemming from the Salary Deferral Agreement and Transition Agreement, do not give rise to an action under Section 1983, as they properly can be addressed by an ordinary breach of contract action in state court. The case law from the U.S. Supreme Court and the Fourth Circuit is clear that, under the facts of this case, Dr. Russo has failed to present a substantial federal question and his invocation of Section 1983 does not cure this infirmity. *See Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 195-96 (2001); *Heath v. City of Fairfax*, 542 F.2d 1236, 1237-38 (4th Cir. 1976); *MCI Constructors, Inc. v. City of Greensboro*, 125 F. App'x 471, 477-78 (4th Cir. 2005).

Further, invocation of the Fourteenth Amendment's due process guarantees requires Dr. Russo to show that the School Board deprived him of a protected property interest. *Kilcoyne v. Morgan*, 664 F.2d 940, 942 (4th Cir. 1981) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972)). However, even if the Court were to find that Dr. Russo had a vested property interest in his salary and benefits, as he contends, this finding does not answer the question of whether a federal cause of action under Section 1983 is the proper remedy for his deprivation of these rights. *See Lujan*, 532 U.S. at 196 (assuming, without deciding, that the state statutory scheme depriving contractors of payment constituted a property interest, but holding "it is an interest . . . that can be fully protected by an ordinary breach-of-contract suit"); *Ramsey*, 844 F.2d at 1272 ("Determining that [Plaintiff] has a property interest in her accumulated sick leave days does not resolve the question of what process is due, and particularly, the question of whether a federal cause of action is the appropriate remedy for her deprivation."); *Piekutowski v. Township of Plains*, 2006 WL 3254536, at *6 (M.D. Pa. Nov. 9, 2006) (holding Plaintiff has no property interest in his accumulated sick leave and stating "even if [Plaintiff's] property interest is protectable, due process is satisfied by the availability of a post-deprivation breach of contract

action in state court.") (citing *Ramsey*, 844 F.2d at 1268). The remedies Dr. Russo seeks are readily available in an ordinary breach of contract action in state court. Therefore, Dr. Russo's allegation that he was deprived of vested property rights arising from his employment contract does not insulate his claims from dismissal for lack of a substantial federal question.

Accordingly, Counts I, II, and III of Dr. Russo's Amended Complaint, relating to his Section 1983 claims, are hereby **DISMISSED**.

*2. Count IV: Breach of Contract Claim*

In light of the dismissal of Dr. Russo's Section 1983 claims, the Court must determine whether supplemental jurisdiction over Dr. Russo's remaining state law breach of contract claim should be declined. *See* 28 U.S.C. § 1367(c)(3) ("The district court may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."). Further, "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 725-26 (1966) (federal courts' power to hear state and federal claims arising from "a common nucleus of operative fact" does not need to be "exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right."). Thus, having dismissed Dr. Russo's Section 1983 claims, this Court declines to exercise jurisdiction over his state law breach of contract claim arising from the same case and controversy.

Accordingly, Count IV of Dr. Russo's Amended Complaint is hereby **DISMISSED**. Further, as the Court dismisses Dr. Russo's Complaint for lack of subject matter jurisdiction, the

Court does not address the School Board's alternative bases for dismissal – *res judicata* and doctrines of abstention.

**B. Summary Judgment**

Having dismissed the Complaint for lack of jurisdiction, the Court does not reach the School Board's alternative Motion for Summary Judgment.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss is **GRANTED**. The parties shall bear their own costs associated with this litigation.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel and parties of record.

**IT IS SO ORDERED.**

/s/
_____
Raymond A. Jackson
United States District Judge

Norfolk, Virginia
December 15, 2011